**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JASON HEPPNER, | CIVIL ACTION    1:14-cv-07944 |
| Plaintiff, | |
| v. | COMPLAINT |
| M&T BANK, BAYVIEW LOAN SERVICING, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, INC., TRANS UNION, LLC, and CBCINNOVIS, INC. | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT**

NOW COMES the Plaintiff, JASON HEPPNER (hereinafter "Heppner"), by and through

his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, M&T BANK,

BAYVIEW LOAN SERVICING, LLC, EXPERIAN INFORMATION SOLUTIONS, INC.,

EQUIFAX INFORMATION SERVICES, INC., TRANS UNION, LLC, and CBCINNOVIS,

INC. (collectively "Defendants") as follows:

NATURE OF THE ACTION

1.  Heppner brings this action for violations of the Fair Credit Reporting Act ("FCRA")

pursuant to 15 U.S.C. § 1681, violations of the Fair Debt Collection Practices Act ("FDCPA")

pursuant to 15 U.S.C. § 1692, violations of the Telephone Consumer Protection Act ("TCPA")

pursuant to 47 U.S.C. § 227, violations of the Bankruptcy Discharge Injunction pursuant to 11

U.S.C. § 524 and § 105, and violations of the Illinois Consumer Fraud and Deceptive Practices

Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

1

**JURISDICTION AND VENUE**

2.   Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3.   The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. § 1367.

4.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Heppner resides in this District, the property securing the mortgage loan at issue is situated in this District, and a substantial part of the events or omissions occurred in this District.

**PARTIES**

5.   Heppner is a consumer and natural person over 18-years-of-age who at all times relevant owned and resided at the property located at 13240 West Circle Parkway, Crestwood, IL 60445 ("subject property").

6.   Defendant M&T BANK ("M&T") is a New York corporation with its principal place of business in New York. M&T is a foreign company and a creditor, lender, debt collector, furnisher of credit information, and servicer of mortgage loans across the country, including the State of Illinois.

7.   Defendant BAYVIEW LOAN SERVICING, LLC ("Bayview") is a Delaware limited liability corporation with its principal place of business in Gables, Florida. Bayview is a foreign company, debt collector, and servicer of mortgage loans across the country, including the State of Illinois.

8.   Defendant EXPERIAN, LLC ("Experian") is a Delaware limited liability corporation with its principal place of business in Costa Mesa, California. Experian is in the business of

compiling and maintaining consumer files for the purpose of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

9. Defendant EQUIFAX, INC. ("Equifax") is a Delaware corporation with its principal place of business in Atlanta, Georgia. Equifax is in the business of compiling and maintaining consumer files for the purpose of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

10. Defendant TRANS UNION, LLC ("Trans Union") is a Delaware limited liability corporation with its principal place of business in Chicago, Illinois. Trans Union is in the business of compiling and maintaining consumer files for the purpose of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

11. Defendant CBCINNOVIS, INC. ("Innovis") is Delaware corporation with its principal place of business in Columbus, Ohio. Innovis is in the business of providing credit verification, credit reporting, consumer data, credit screening, and collection services to third party creditors, loan servicers, and debt collectors on a nationwide basis, including in the State of Illinois.

## BANKRUPTCY CASE

12. On November 1, 2011, Heppner executed a mortgage refinance loan in the amount of $118,299.00 ("subject loan" or "subject debt") in favor of JPMorgan Chase, N.A. ("Chase") secured by the subject property.

13. On June 12, 2013, Heppner filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 13-24301 ("bankruptcy").

14.  Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to Chase, in the amount of $111,159.00, secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D filed in Heppner's bankruptcy case.

15. Also on June 12, 2013, Heppner filed his original Chapter 13 plan ("Original Plan"). *See* Exhibit B, a true and correct copy of Heppner's Original Plan.

16. Heppner's Original Plan proposed to treat Chase's claim as follows:

> "Debtor is surrendering the real property located at 13240 West Circle Drive Parkway, Unit 309, Crestwood, Illinois to JPMorgan Chase Bank, N.A., in full satisfaction of its claim." *Id.* at p. 5.

17. On June 15, 2013, by virtue of listing Chase as a creditor, the Bankruptcy Noticing Center ("BNC") served Chase with a notice of Heppner's bankruptcy filing and Heppner's Original Plan. *See* Exhibit C, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan upon Chase.

18. On June 26, 2013, Chase, through their counsel Codilis & Associates, P.C., filed an Entry of Appearance and Request for All Notices in Heppner's bankruptcy case.

19. On July 22, 2013, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from Chase appeared at the 341 Meeting of Creditors.

20. On August 9, 2013, Heppner filed his modified Chapter 13 plan ("Modified Plan"). *See* Exhibit D, a true and correct copy of Heppner's Modified Plan and BNC Certificate of Notice establishing service of the Modified Plan upon Chase.

21. The Modified Plan purposed to treat Chase's claim as follows:

> "Debtor is surrendering the real property located at 13240 West Circle Drive Parkway, Unit 309, Crestwood, Illinois to JPMorgan Chase, N.A., in full satisfaction of its secured claim." *Id.* at p. 5.

22. Chase did not file any objection to Heppner's Chapter 13 Original or Modified Plan.

23. At no time did Chase filed a proof of claim in Heppner's bankruptcy on account of the subject debt.

24. On August 12, 2013, the Modified Plan was confirmed by the Honorable Timothy A. Barnes. *See* Exhibit E, a true and correct copy of the Confirmation Order.

25. Heppner fully performed his duties as set forth in his confirmed Modified Plan.

26. On April 7, 2014, the Bankruptcy Court entered an Order of Discharge in Heppner's case of all dischargeable debts, including the subject loan. *See* Exhibit F, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon Chase.

27. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

28. On April 9, 2014, the BNC served Chase with the Order of Discharge. *Id.*

29. Pursuant to 11 U.S.C. § 524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Chase or any other party.

30. On May 5, 2014, Heppner's bankruptcy case closed.

31. At some point after Heppner filed his bankruptcy, and while the subject loan was in default, Chase sold the subject loan to M&T.

32. After acquiring ownership of the subject loan, M&T employed Bayview to service the subject loan on its behalf.

5

33. Heppner's personal liability on the subject loan was extinguished by virtue of his bankruptcy discharge, thus terminating the business relationship with Chase and any of its successors and assigns, including M&T and Bayview.

34. At all times relevant, M&T and Bayview had a principal-agent relationship with regard to the subject debt and Heppner.

35. M&T had a consensual, agency relationship with Bayview whereby M&T (as the principal) had the right to control the activities of Bayview (as the agent), and Bayview had the authority to act on behalf of M&T.

### M&T AND BAYVIEW'S POST-DISCHARGE COMMUNICATIONS

36. After the discharge injunction had taken effect, M&T and its servicer, Bayview, sought to collect the subject debt from Heppner personally.

37. On April 16, 2014, M&T sent Heppner a dunning letter stating that: "As of April 16, 2014 you are 380 days delinquent on your mortgage loan...[the] total amount needed to bring the loan current: $14,794.38." The letter attached a payment coupon. *See* Exhibit G, a true copy of M&T's April 16, 2014 dunning letter and statement.

38. On April 17th, April 24th, and May 1st of 2014, Heppner received phone messages to his work phone from Bayview regarding the subject debt and requesting an immediate call back.

39. Also on May 1, 2014, the attorneys for Bayview sent Heppner a notice that they were seeking to collect a debt owed and had no record of any bankruptcy, therefore would foreclose for the full amount due. *See* Exhibit H, a true copy of the May 1, 2014 Letter from the attorneys for Bayview.

40. On May 12, 2014, Heppner received a phone call to his work phone from Bayview regarding the subject debt. Heppner asked Bayview to stop contacting him because he had

6

received a bankruptcy discharge on April 7, 2014, was represented by an attorney, and was not interested in keeping the subject property or any loss mitigation.

41. On May 16, 2014, M&T sent Heppner a dunning letter stating that: "As of May 16, 2014 you are 410 days delinquent on your mortgage loan...[the] total amount needed to bring the loan current: $15,978.13." *See* Exhibit I, a true copy of M&T's May 16, 2014 dunning letter.

42. On May 23, 2014, Bayview sent Heppner a notice threatening legal action for failure to pay the subject debt. The letter stated, "Your credit standing could also suffer as a result of any legal action, including foreclosure." *See* Exhibit J, a true and correct copy of Bayview's May 23, 2014 correspondence to Heppner.

43. On May 27, 2014, Bayview sent Heppner a letter that he was "approved for a loan modification," and to call Bayview immediately to make his first loan modification payment. The notice advised Heppner to make his payments directly to M&T. *See* Exhibit K, a true and correct copy of Bayview's May 27, 2014 correspondence.

44. On May 27, 2014, Heppner received a phone call to his work phone from Bayview attempting to collect the subject debt.

45. On June 16, 2014, M&T sent Heppner a dunning letter that: "As of June 16, 2014 you are 441 days delinquent on your mortgage loan...[the] total amount needed to bring the loan current: $19,591.88. " The letter attached a payment coupon. *See* Exhibit L, a true copy of M&T's June 16, 2014 dunning letter and statement.

46. On June 20, 2014, Heppner received 2 phone messages from Bayview, one to his work phone and one to his cell phone, attempting to collect the subject debt. The calls began with the sound of 3-5 "clicks" before a person started speaking. Heppner never consented to receive any phone calls to his cell phone from M&T or Bayview.

47. On July 8, 2014, Heppner called Bayview to notify them of his discharge in bankruptcy and request that Bayview stop calling his work phone and cell phone. This phone call lasted 13 minutes. Bayview confirmed that it had Heppner's bankruptcy information and a record in its system to stop calling him at work and on his cell phone. Heppner again provided Bayview with his bankruptcy case number and his attorney's information.

48. On July 9, 2014, a day after Heppner confirmed that Bayview had his bankruptcy information and revoked any consent to call his cell phone, Heather Muciada called his cell phone again. During this five minute phone call, Heppner once again notified Heather that he had received a discharge in bankruptcy, was not interested in loss mitigation, and to please stop calling him and sending him solicitations for a loan modification, short-sale, or deed-in-lieu.

### CREDIT REPORTING AND HEPPNER'S CREDIT DISPUTES

#### a. Impermissible Credit Inquiry By Innovis and M&T

49. On May 24, 2014, Heppner received an alert that the consumer data collection company Innovis requested a copy of Heppner's Experian credit report on behalf of M&T. Heppner had never authorized Innovis to make the credit inquiry. *See* Exhibit M, a true and correct copy of Heppner's Protect My ID Credit Alert.

50. Heppner's Experian Report further reflected that Innovis had accessed his credit report on May 24, 2014. The inquiry was recorded on Heppner's credit report and decreased Heppner's credit score. *Id.*

51. On May 27, 2014, Heppner called Innovis regarding his credit report being accessed. Innovis advised that it had made the credit inquiry at the request of M&T. Heppner never authorized M&T Bank to access his credit report.

52. M&T had no legitimate business need for Heppner's credit report at the time that Innovis requested a copy of Heppner's credit report on M&T's behalf. Any debtor-creditor relationship that Heppner had with M&T terminated upon Heppner's bankruptcy discharge.

**b. Inaccurate Reporting by All Credit Reporting Agencies**

53. On June 9, 2014, after his bankruptcy discharge, Heppner pulled a three-bureau credit report with Experian, Equifax, and Trans Union (collectively the "CRAs"). *See* Exhibit N, a true and correct copy of Heppner's June 9, 2014 three-bureau credit report.

54. In the June 9, 2014 three-bureau report, Equifax was incorrectly reporting the subject debt under the M&T tradeline as 120 days late with an overdue balance of $111,159.00. *Id.*

55. In the June 9, 2014 three-bureau report, Experian was also incorrectly reporting the subject debt under the M&T tradeline as having a current balance of $111,159.00. *Id.*

56. In the June 9, 2014 three-bureau report, Trans Union was accurately reporting the subject debt under the M&T tradeline with a $0 balance. *Id.* However, when Heppner pulled his three-bureau report again on June 13, 2014, Trans Union had changed its credit reporting to reflect that the M&T account was delinquent with a balance owed.

**c. Heppner's First Dispute Letter to All CRAs**

57. On June 18, 2014, Heppner sent a credit dispute letter ("first dispute letter") to all three CRAs informing them of his bankruptcy discharge and requesting that the CRAs update his credit file to accurately reflect his bankruptcy discharge. *See* Group Exhibit O, a true copy of Heppner's June 18, 2014 Dispute Letters to the CRAs and USPS Green Cards.

58. Among other things, Heppner's first dispute letter to the CRAs stated the following:

    a. "I am enclosing a copy of the Order Discharging Debtor;"
    b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"

    c.  "Report a current balance of '0'" on all discharged accounts;

    d.  "Specifically, I am requesting an investigation into the following account: M&T Bank, account number 738009157xxxx lists an account balance of $111,159, a status of 120 days late, and a condition as derogatory;" and

    e.  "I request that you forward this letter, and enclosures, to [M&T]." *Id.*

59. Heppner sent his first dispute letter to all of the CRAs via certified mail, return-receipt requested. *Id.*

    **i.**    **Equifax's Response to Heppner's First Dispute Letter**

60. On June 26, 2014, Equifax responded to Heppner's first dispute letter by correcting some of the accounts, but not the M&T account. *See* Exhibit P, a true and correct copy of Equifax's June 26, 2014 response and credit report submitted by Equifax to Heppner.

61. Equifax provided the following in its response to Heppner's first dispute letter:

    a.  "We have reviewed the bankruptcy information....This bankruptcy is currently reporting as discharged."

    b.  "We have researched the credit account. Account # - 426684118706 [this account # refers to the Chase account, not the M&T account]. This account is currently reporting included in bankruptcy. If you have additional questions about this item please contact: Chase Card Services...." *Id.*

62. Equifax's response did not address the M&T account (account 738009157xxxx) or the M&T tradeline, which Heppner had specifically disputed in his first dispute letter to Equifax.

63. With its response, Equifax included an "updated" copy of Heppner's Equifax report as of June 26, 2014. The M&T tradeline still reported the subject debt as over 180 days past due, delinquent, with a high balance owed, and an account balance of $111,159.00. *See* Exhibit P.

64. A few weeks later, on July 21, 2014, Equifax sent Heppner a supplemental response to his June 18th dispute stating:

>>> *We have researched the credit account. Account # − 738009157\* The results are:* This creditor has verified to OUR company that the current status is being reported correctly. Additional information has been provided from the original source regarding this item. If you have additional questions about this item please contact: ***M&T Bank, Attn: Cbd Team, PO Box 900, Millsboro DE 19966−0900 Phone: (800) 724−2440***

*See* Exhibit Q, a true and correct copy of Equifax's July 21, 2014 investigation response.

### ii.    Experian's Response to Heppner's First Dispute Letter

65. On July 2, 2014, Experian responded to Heppner's first dispute letter by correcting some of the accounts, but not the M&T account. *See* Exhibit R, a true and correct copy of Experian's response and credit report submitted to Heppner.

66. Experian provided the following in its response to Heppner's first dispute letter:

   a.  "To assist you in understanding your correction summary, we have provided additional information that relates directly to items on your personal credit report. US BKPT CT IL CHICAGO 132430....PLEASE REFER TO YOUR CREDIT REPORT FOR UPDATE."
   b.  "We have completed the processing of your dispute(s). Here are the results: GLENVIEW STATE BANK 1000000240281...Updated...CHASE 426684118706...Updated...CHASE 465162175...Updated." *Id.* at p. 1.

67. Experian's response did not address the M&T account or the M&T tradeline, which Heppner specifically disputed in his first dispute letter to Experian.

68. With its response, Experian included an "updated" copy of Heppner's Experian report as of July 2, 2014. The M&T tradeline still reported the subject debt as having a monthly payment due, a delinquency of $15,591.00, and an account balance of $111,159.00 as of June 2014 (two months after Heppner's bankruptcy discharge). *Id.* at p. 6.

### iii.    Trans Union's Response to Heppner's First Dispute Letter

69. On July 2, 2014, Heppner received a response to his first dispute letter from Trans Union. *See* Exhibit S, a true and correct copy of Trans Union's July 2, 2014 response and credit report submitted to Heppner.

70. Trans Union provided the following in its response to Heppner's first dispute:

   a.  "Our investigation of the dispute you recently submitted is now complete. The results are listed below. If an item you disputed is not in the list of results below,

11

it was either not appearing in your credit file or it already reflected status at the time of investigation."

71. Trans Union included a list of accounts that were updated or reflected new information in response to Heppner's first dispute. However, the M&T account was not in the list, and Trans Union did not provide an updated M&T tradeline with its investigation results, which Heppner had specifically disputed in his first dispute letter to Trans Union. *Id.*

### iv. Heppner's Second (Telephone) Dispute to Experian

72. After Heppner's first dispute letter, Experian's reporting of the M&T tradeline continued to omit his bankruptcy discharge and report the M&T account as delinquent. *See* Exhibit R. On July 3, 2014, Heppner called Experian and made his second formal dispute. Heppner reported that the M&T tradeline on his Experian report did not reflect his bankruptcy. Experian verified Heppner's identity, took down his information, and made a record of his dispute of the reporting of the M&T account.

### d. Heppner's Dispute and Requests for Reinvestigation to M&T

73. On July 9, 2014, Heppner e-mailed "Heather Muciuda" at Bayview, regarding the continued inaccurate credit reporting by M&T on all three credit reports. He attached the inaccurate reporting and bankruptcy Order of Discharge to the e-mail. He wrote:

Heather,

This is the error that is being reported on all (3) of my credit reports from Equifax, Experian and Trans Union (see attached). This error has a direct impact on my credit scores.

My Chase mortgage account was included in my Chapter 13 bankruptcy and this debt was discharged. Chase sold this mortgage account to M&T Bank before the bankruptcy discharged was issued. The M&T Bank mortgage account status should be listed on my (3) credit reports as 'Discharged through Bankruptcy Chapter 13' and the account history should be listed as 'Debt included in Chapter 13 Bankruptcy on 04-07-14'.

**M&T Bank/Bayview Loan Servicing is currently trying to collect on a bankruptcy discharged debt. The collection of discharged debts is prohibited under the terms of my**

12

> **bankruptcy discharge.**
>
> Thanks,
> Jason

*See* Exhibit T, a true copy of the July 9, 2014 e-mail to Heather Muciuda at Bayview.

74. On August 8, 2014, Heppner called M&T's "credit reporting department" and left a message detailing the inaccurate reporting of the subject loan account by M&T on all three of his credit reports with the CRAs.

75. On August 14, 2014, Heppner received a response to his June 9, 2014 and August 8, 2014 credit disputes from M&T. The M&T response letter stated that its credit bureau reporting was accurate and that it will not make any changes. *See* Exhibit U, a true copy of M&T's August 14, 2014 Credit Reporting Dispute Response Letter.

76. On September 16, 2014, Heppner again pulled a three-bureau credit report to check the accuracy of the M&T tradeline in response to his disputes with the CRAs and M&T. The inaccurate reporting of the subject debt by M&T remained on all three of Heppner's credits reports. *See* Exhibit V, a true copy of Heppner's September 16, 2014 three-bureau credit report.

77. On September 16, 2014, all three CRAs listed the M&T account as negative, reported a past due balance of $17,868.00, reported a high balance owed, reported the account as over 120 days past due, and reported a monthly payment amount owed of $905.00. *Id.* There was no record of a bankruptcy or Heppner's dispute of the M&T tradeline. *Id.*

78. Since he first disputed the inaccurate reporting in June of 2014, Heppner has applied for credit and had been denied based upon negative account history with all three of the CRAs. The reasons for the denials of credit include that his credit reports reflect a serious delinquency, too many accounts with a high and past due balance, and too many credit inquiries in the past 12 months. *See* Group Exhibit V, a true copy of Heppner's credit denials.

### COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST Innovis and M&T)

79. Heppner restates and realleges paragraphs 1 through 78 as though fully set forth herein.

80. Heppner is a consumer as defined by 15 U.S.C. §§ 1681a(c) and (b).

81. Innovis and M&T are each a "person" as defined by 15 U.S.C. § 1681a(b).

82. M&T is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2 and a "financial institution" as defined by 15 U.S.C. § 1681a(t).

83. Innovis is M&T's agent with respect to Heppner's credit file. M&T hired Innovis to collect and provide information on Heppner's credit file. Innovis accessed Heppner's credit file at the direction and for the benefit of M&T.

**a. Innovis and M&T's Impermissible Credit Inquiry In Violation of FCRA § 1681b(f)**

84. In May of 2014, over a month after Heppner received a discharge in bankruptcy, Innovis accessed Heppner's Experian credit report on behalf of M&T without Heppner's permission or any permissible purpose.

85. Heppner's Chapter 13 bankruptcy discharge ended any debtor/creditor relationship between Heppner and M&T, thus M&T did not have a legitimate business need for Heppner's credit report under the FCRA.

86. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose enumerated under the FCRA. 15 U.S.C. § 1681b(f).

87. Innovis and M&T willfully violated § 1681b(f) when they accessed Heppner's credit report without any permissible purpose under the FCRA.

88. Heppner was harmed by M&T's conduct as the impermissible pull of his credit report contributed to a lower credit score and denials of credit.[1]

**b. M&T's Failure to Conduct a Reasonable Investigation Under § 1681s-2(b)(1)**

89. M&T violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving multiple requests for an investigation and reinvestigation from all of the CRAs and Heppner.

90. M&T violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Heppner and the CRAs.

91. Had M&T reviewed the information provided by Heppner and the CRAs, it would have corrected the inaccurate designation of the subject loan to the CRAs; instead M&T wrongfully confirmed its inaccurate reporting without conducting a reasonable investigation.

92. M&T violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Heppner's file.

93. M&T violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Heppner's disputes with the CRAs.

94. M&T violated 15 U.S.C. § 1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to the CRAs after being put on notice and discovering inaccurate reporting with respect to the subject debt.

95. M&T failed to conduct a reasonable reinvestigation of its reporting of the subject debt, record that the information was disputed, or delete the inaccurate reporting from Heppner's

---

[1] A large number of inquiries on a consumer's credit file has a negative impact on the consumer's credit score, as the inquiries are considered by lenders to be an indicator of poor creditworthiness. *See* myfico.com, "Credit Checks & Inquiries," available at http://www.myfico.com/crediteducation/creditchecks/inquiries.aspx (last visited Sept. 23, 2014).

credit file within 30 days of receiving notice of a dispute from the CRAs and Heppner under 15 U.S.C. § 1681i(a)(1).

96. M&T violated 15 U.S.C. § 1681s-2(b)(2) by failing to take the required action with respect to Heppner by the deadlines set forth in 15 U.S.C. § 1681i(a)(1).

97. Despite the blatantly obvious errors on Heppner's credit file, and Heppner's efforts to correct the errors, M&T did not correct the errors or trade lines to report accurately and completely. Instead, M&T wrongfully furnished and re-furnished false information that the subject debt was delinquent.

98. A reasonable investigation by M&T would have confirmed the veracity of Heppner's disputes, yet the inaccurate information continues to be reported on Heppner's credit file.

99. Had M&T *any* steps to investigate Heppner's valid disputes or the CRAs requests for investigation, it would have permanently corrected the erroneous credit reporting. Heppner provided all relevant information in his requests for investigation. Furthermore, Heppner's bankruptcy information is public record that is widely available and easily ascertainable.

100. By deviating from the standards established by the banking industry and the FCRA, M&T acted with reckless disregard for its duty as a furnisher to report accurate and complete consumer credit information to both the CRAs and Heppner directly.

101. M&T willfully and knowingly confirmed and reported the inaccurate information on Heppner's credit reports with the CRAs, rendering M&T liable for punitive damages. 15 U.S.C. § 1681n.

16

WHEREFORE, Plaintiff JASON HEPPNER requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;

c. Award Heppner actual damages, in an amount to be determined at trial, for the underlying FCRA violations;

d. Award Heppner statutory damages of $1,000.00 for violations of the FCRA, pursuant to 15 U.S.C. § 1681n;

e. Award Heppner punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n;

f. Award Heppner costs and reasonable attorney fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EXPERIAN)

102. Heppner restates and realleges paragraphs 1 through 101 as though fully set forth herein.

103. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

104. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p).

**a. Experian's Credit Release In Violation of FCRA §§ 1681b & e**

105. Experian is only permitted to release a consumer credit report to a third party for a permissible purpose enumerated in FCRA § 1681b(a).

106. Specifically, § 1681b(a) allows a CRA to furnish a consumer report to a person (a) which it has reason to believe intends to use the information in connection with a credit transaction involving the consumer, (b) for review or collection of an account of the consumer's, (c) for a legitimate business need in connection with a business transaction that is initiated by the

consumer, or (d) for review of an account to determine whether the consumer continues to meet the terms of the account; Heppner did not apply for additional credit with M&T.

107. Experian knowingly furnished Heppner's credit report to Innovis on behalf of M&T; notwithstanding the fact that neither Innovis nor M&T had any permissible purpose to access Heppner's credit report.

108. Innovis and M&T certified to Experian that they had a permissible purposed to access Heppner's credit file, and Experian failed to conduct an independent investigation to confirm that Innovis and M&T had a permissible purpose to receive Heppner's credit file.

109. Experian knowingly furnished Heppner's credit report to Innovis on behalf of M&T; notwithstanding the fact that Heppner's bankruptcy discharge ended any debtor/creditor relationship relating to the subject loan.

110. Experian had a duty to maintain reasonable procedures, including to prevent the impermissible accessing and releasing of consumer credit reports, even if the third party to which the credit report is released stated a "facially valid" purpose for accessing the credit report. *See* 15 U.S.C. § 1681e(a).

111. Experian willfully violated §§ 1681b and 1681e by knowingly releasing Heppner's credit report to Innovis and M&T without a permissible purpose under the FCRA.

WHEREFORE, Plaintiff JASON HEPPNER requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;
b. Order the deletion of all adverse credit reporting;
c. Award Heppner actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;
d. Award Heppner statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n;

e.  Award Heppner punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n;

f.  Award Heppner costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT III - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST ALL CRAS)

112.  Heppner restates and realleges paragraphs 1 through 111 as though fully set forth herein.

113.  The CRAs are each a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

114.  The CRAs are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p).

115.  Heppner provided the CRAs with all relevant information and documentation to establish that he filed for bankruptcy in his requests for investigation and reinvestigation.

116.  The CRAs prepared Heppner's credit reports containing inaccurate information by reporting the subject debt as over 120 to 180 days past due, that Heppner owed an amount past due, and owed a balance, when in fact he had received a bankruptcy discharge and owed no past due amount or balance on the subject debt.

117.  Moreover, a simple review of the public record would have confirmed that Heppner had filed bankruptcy, no longer owed a balance, was not past due from the time of his bankruptcy filing in June 2013, and bankruptcy discharge in April 2014. Bankruptcy filings are public record and widely available and easily ascertainable.

118.  The CRAs violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and to subsequently delete or correct the information on Heppner's credit file.

119.  Had the CRAs taken *any* steps to investigate Heppner's valid disputes, they would have determined that subject loan was included in bankruptcy, and M&T's continued negative and delinquent reporting on the subject account was false and erroneous.

120.  Instead, the CRAs sent Heppner multiple correspondences that they had updated their records to reflect Heppner's bankruptcy discharge, at the same time that they willfully and knowingly continued to report the inaccurate information.

121.  The CRAs violated 15 U.S.C. § 1681i(a)(2) by failing to record all relevant information that they received from M&T and Heppner with regard to Heppner's credit report and the subject debt.

122.  The CRAs violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information that they received from Heppner and M&T with regard to the subject debt.

123.  The CRAs violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Heppner's disputes.

124.  The CRAs violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from M&T that the information was complete and accurate, and without sending notice of the re-reporting to Heppner. The lack of notice and correction caused Heppner to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Heppner's credit worthiness and credit score.

125.  Since *all* of Heppner's other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," the CRAs should have investigated why the M&T tradeline – and only the M&T tradeline –  was still reported as "past due" or "due and owing."

126. Moreover, after Heppner's written disputes, the CRAs had specific information related to Heppner's bankruptcy case and discharge order, which included the M&T debt.

127. The CRAs knew that the inaccurate designation of the subject debt on Heppner's credit report under the M&T tradeline as delinquent, in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse affect on Heppner's credit worthiness and ability to receive a "fresh start" after bankruptcy.

128. The FCRA requires that the credit reporting industry put procedures and systems in place to promote accurate credit reporting.

129. By deviating from the standards established by the credit reporting industry and the FCRA, the CRAs acted with reckless disregard for their duties to report accurate and complete consumer credit information.

130. It is the CRAs' regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information is accurate.

131. The CRAs' perpetual non-compliance with the requirements of the FCRA is indicative of the reckless and willful nature of their conduct in maintaining Heppner's credit file and reporting Heppner's credit information.

132. The CRAs acted reprehensively by reporting and re-reporting an innocent consumer as continually delinquent, in default, and owing a high past due balance on the M&T account after bankruptcy.

133. The CRAs' conduct was willful, rendering each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

21

WHEREFORE, Plaintiff JASON HEPPNER requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Order the deletion of all adverse credit reporting;

c. Award Heppner actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

d. Award Heppner statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n;

e. Award Heppner punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n;

f. Award Heppner costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST M&T AND BAYVIEW)

134.  Heppner restates and realleges paragraphs 1 through 133 as though fully set forth herein.

135.  Heppner is a "consumer" as defined by FDCPA § 1692a(3).

136.  The subject debt qualifies as a "debt" as defined by FDCPA § 1692a(5) as it arises out of a transaction for personal, family, or household purposes.

137.  M&T and Bayview each qualify as a "debt collector" as defined by § 1692a(6) because each regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

138.  M&T and Bayview each qualify as a "debt collector" because each acquired rights to the subject loan after it was in default. 15 U.S.C. § 1692a(6).

139.  Bankruptcy Code § 524(a)(2)-(3) commonly known as the discharge injunction, prohibits "an act, to collect, recover or offset any such debt as a personal liability of the debtor," and "operates as an injunction against the commencement or continuation of an action, the

22

employment of process, or an act, to collect or recover from, or offset against, property of the debtor." 11 U.S.C. §§ 524(a)(2)-(3).

140.  M&T and Bayview violated 15 U.S.C. §§ 1692 c(a)(2), d, d(5), e(2), e(5), e(10), and f(1) through their debt collection efforts on a debt discharged in bankruptcy.

**a.  Violation of  FDCPA § 1692c**

141.  M&T and Bayview violated §1692 c(a)(2), by sending the dunning letters directly to Heppner when they knew that Heppner was represented by counsel. The identity and contact information of Heppner's counsel was expressly stated in the Notice of Chapter 13, which is a matter of public record, and was served upon M&T and Bayview through their predecessor, Chase. Heppner also notified Bayview on at least one occasion that he was represented by an attorney and provided his counsel's contact information.

142.  M&T and Bayview violated FDCPA § 1692c(a)(3) by contacting Heppner at his place of employment knowing that Heppner's employer prohibited such communications and Heppner had specifically requested that M&T and Bayview stop calling his work phone.

**b.  Violation of  FDCPA § 1692d**

143.  M&T and Bayview engaged in abusive and oppressive conduct in violation of  FDCPA § 1692d(5) by repeatedly calling Heppner at work to collect the subject debt.

144.  M&T and Bayview violated FDCPA § 1692d(5) by repeatedly causing Heppner's work phone to ring and engaging Heppner in conversations regarding the collection of the subject debt while he was at work, knowing that Heppner and his employer prohibited such communications.

145.  M&T and Bayview violated FDCPA §§ 1692d and d(5) when they harassed, oppressed, and abused Heppner by relentlessly calling him and sending him letters and trial modification

offers seeking immediate payment in an effort to collect a discharged debt after he told them to stop.

### c. Violation of FDCPA § 1692e

146. M&T and Bayview violated § 1692e(2) by falsely representing that the subject debt was owed at the time the dunning letters were sent when it was not by virtue of the bankruptcy discharge.

147. M&T and Bayview violated § 1692e(5) by sending the dunning letters to Heppner as they had no legal right to attempt to collect the subject debt by virtue of the bankruptcy discharge.

148. M&T and Bayview violated § 1692e(10) by engaging in deceptive conduct as the subject debt was not owed at the time the dunning letters were sent to Heppner.

### d. Violation of FDCPA § 1692f

149. M&T and Bayview violated §1692f(1) by attempting to collect a debt not permitted by law as Heppner's personally liability was discharged through bankruptcy.

150. M&T and Bayview attempted to coerce and induce Heppner into paying a debt that was not legally owed.

151. As experienced creditors and debt collectors, M&T and Bayview knew or should have known the ramifications of collecting on a debt that was discharged in bankruptcy.

152. M&T and Bayview knew or should have known that Heppner's pre-petition debt was uncollectable as a matter of law.

153. Upon information and belief, M&T and Bayview have no system in place to identify and cease collection of not collectible by virtue of bankruptcy.

WHEREFORE, Plaintiff JASON HEPPNER requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;
b. Award Heppner statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Heppner costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT V – VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (AGAINST BAYVIEW)

154. Heppner restates and realleges paragraphs 1 through 153 as though fully set forth herein.

155. The TCPA prohibits calling persons on their cell phone using an automatic telephone dialing system ("ATDS"). 47 U.S.C. § 227(b)(1)(iii). The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

156. Bayview violated the TCPA by placing two phone calls to Heppner's cell phone using ATDS without Heppner's consent. Any prior consent was revoked by virtue of Heppner's discharge and Heppner's verbal revocation.

157. Pursuant to 47 U.S.C. § 227(b)(3)(B), Bayview is liable to Heppner for at least $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Bayview's willful and knowing violation of the TCPA should trigger this Honorable Court's ability to triple the damages to which Heppner is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff JASON HEPPNER requests that this Honorable Court:

a. Declare Bayview's conduct to be a violation of the TCPA;
b. Award Heppner damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);

    c.   Award Heppner reasonable attorney fees and costs; and

    d.   Award any other relief this Honorable Court deems equitable and just.

**COUNT VI- VIOLATION OF THE DISCHARGE INJUNCTION**
**(AGAINST M&T AND BAYVIEW)**

158.  Heppner restates and realleges paragraphs 1 through 157 as though fully set forth herein.

**a.  Section 11 U.S.C. § 524(a)(2)**

159.  Pursuant to 11 U.S.C. § 524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

160.  "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

161.  Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr.N.D.Ill.1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

162.  Furthermore, "[c]orporations can be liable for punitive damages because of acts of their agents if the corporation authorized the doing and the manner of the act of its agent." *Id.* at 230.

**b.  Sending collection letters and calls to Heppner for collection of the discharged debt**

163.  Notwithstanding having actual notice of the discharge injunction, Bayview, as the agent for M&T, continued to call and send Heppner correspondence soliciting him to apply for or accept a loan modification offer by making immediate payments.

26

164.  M&T and Bayview sent multiple collection letters disguised as loss mitigation attempts and unsolicited trial modification offers conditioned upon Heppner making immediate payments on a discharged debt, in direct violation of the discharge injunction.

165.  Bayview, as the agent for M&T, called Heppner on several occasions to solicit him for a loan modification, deed-in-lieu of foreclosure, or short-sale in order to expedite transfer of possession of the subject property or induce Heppner to continue to make monthly payments on a discharged debt.

166.  Bayview, as the agent for M&T, made multiple collection calls to Heppner in violation of the discharge injunction to collect a discharged debt for M&T, after it had notice and actual knowledge of the discharge injunction.

**c.  M&T and Bayview's conduct was perpetual, willful, and wanton**

167.  M&T and Bayview had knowledge of the Order of Discharge and discharge injunction through multiple notices from the BNC, through their predecessor in interest, Chase, the public record, and from Heppner directly. *See* Exhibits A through D.

168.  Despite having actual knowledge of the Order of Discharge, M&T and Bayview committed multiple egregious violations of Heppner's discharge injunction by failing to cease collection efforts as evidenced by the constant calls and letters, and requests for immediate payment via dunning letters, statements, and unsolicited loan modification offers.

169.  Based on the broad language of the Bankruptcy Code, M&T and Bayview willfully sought to collect a debt from Heppner in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

170.  Heppner is entitled to actual damages, attorney's fees, and costs for M&T and Bayview's willful violations of the discharge injunction. Heppner is also entitled to punitive

damages for M&T and Bayview's arrogant definance of the Bankruptcy Code and its provisions. The Court should award punitive damages to deter M&T and Bayview from future misconduct.

WHEREFORE, Plaintiff JASON HEPPNER requests that this Honorable Court:

a. Hold M&T and Bayview in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§ 524 and 105;
b. Order M&T and Bayview to pay Heppner for his actual damages in the amount of $30,000.00 as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§ 524 and 105;
c. Order M&T and Bayview to pay punitive damages in the amount of $150,000.00 for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§ 524 and 105;
d. Order M&T and Bayview to pay Heppner his reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§ 524 and 105; and
e. Provide such other and further relief as the Court may deem just and proper.

### COUNT VII – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
### (AGAINST M&T AND BAYVIEW)

171. Heppner restates and reallages paragraphs 1 through 170 as through fully set forth herein.

172. Heppner is a "person" as defined in ICFA, 815 ILCS 505/1, et seq.

**a. Unfairness**

173. M&T and Bayview are engaged in commerce in the State of Illinois with regard to Heppner, the subject loan, and the subject property. M&T and Bayview specialize in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in their regular course of business.

174. M&T and Bayview's demands for payment on the subject debt, which was duly scheduled in Heppner's bankruptcy and ultimately discharged, represents the use of false pretenses and misleading communication to attempt to collect a debt that was not owed at the time the demands for payment were made.

175.  It was unfair for M&T and Bayview to seek to collect a discharged debt from Heppner through constant misleading letters, pre-approved and continuous loss mitigation offers, and phone calls to his work phone and cells phone when Heppner had asked for the contact to stop.

176.  It was unfair for M&T and Bayview to attempt to induce Heppner to make payments on a discharged debt by repeatedly mailing monthly statements, dunning letters, and directing their attorney to send communications that the subject debt was past due, not included in bankruptcy, and that Bayview would seek full payment through foreclosure.

177.  It was unfair for M&T and Bayview to contact Heppner directly knowing that he was represented by an attorney.

178.  M&T and Bayview intended that Heppner rely on the their unfair acts and Heppner did in fact rely on the unfair acts to his detriment.

179.  Heppner relied upon M&T and Bayview's false and misleading information

      i.  by continually seeking clarification that M&T and Bayview had a record of his bankruptcy discharge;

     ii.  listening to voicemails or taking phone calls regarding the subject debt while at work and on his work phone;

   iii.  taking time out of his work day to discuss a discharge of the subject debt with M&T and Bayview; and

   iv.  spending time and money to consult with his attorneys regarding the effect of his discharge.

180.  M&T and Bayview bullied Heppner, an unsophisticated consumer, into submission with perpetual unfair and deceptive conduct through lies, harassment, and deception regarding the collectability of the subject debt, and by ignoring his requests for the communications to stop or be directed to his attorney.

181.  An award of punitive damages is appropriate because M&T and Bayview's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights

of Heppner and consumers, generally, and Heppner had no choice but to submit to the continued

letters and phone calls.

WHEREFORE, Plaintiff JASON HEPPNER requests that this Honorable Court:
a. Enter judgment in his favor and against M&T and Bayview;
b. Award Heppner his actual damages in an amount to be determined at trial;
c. Award Heppner punitive damages in an amount to be determined at trial;
d. Award Heppner his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**


Dated: October 10, 2014            Respectfully Submitted,

                                           /s/ Mara A. Baltabols

                                           Mara A. Baltabols, Esq. ARDC#6299033
                                           Mohammed O. Badwan, Esq. ARDC#6299011
                                           Daniel J. McGarry, Esq. ARDC#6309647
                                           Counsel for Heppner
                                           Sulaiman Law Group, LTD
                                           900 Jorie Blvd, Ste 150
                                           Oak Brook, IL 60523
                                           Phone (630)575-8181
                                           Fax: (630)575-8188